# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 18-cv-0003-WJM

ROBERT J. NOXON,

    Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION[1],

    Defendant.

---

## ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS

---

This is a Social Security Benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Robert J. Noxon ("Plaintiff") challenges the final decision of Defendant, the Social Security Administration ("Administration"), denying his application for period of disability and disability insurance benefits. After a hearing, the denial was affirmed by an administrative law judge ("ALJ"), who ruled that Plaintiff was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the Administration's decision to deny Plaintiff's application for disability insurance benefits is reversed and this matter is remanded for an immediate award of benefits.

---

[1] The Social Security Administration no longer has a commissioner nor a lawful acting commissioner. *See* Letter from Thomas H. Armstrong, General Counsel of the Government Accountability Office, to President Donald Trump (Mar. 6, 2018), *available at* https://www.gao.gov/assets/700/690502.pdf (Last accessed Aug. 8, 2018). Lacking any other alternative, the Court *sua sponte* substitutes the Social Security Administration itself as the proper defendant.

# I. BACKGROUND

Plaintiff was born on 1956 and was 59 years old on the date last insured. (Administrative Record ("R.") (ECF No. 11) at 347.) Plaintiff grew up in Colorado and has a bachelor's degree in education and pastoral ministry, and some vocational training. (R. at 245, 340.) Plaintiff has held 25 jobs in the last 14 years. (R. at 124–30.) His past relevant work experience includes a broad range of professions, including school teacher, sales clerk, pharmacy technician, and shuttle bus driver. (R. at 347.) Plaintiff claims that he has been disabled since September 1, 2012 due to a combination of mental health impairments including bipolar disorder (depressed without psychosis), anxiety disorder, dependent personality disorder, and ADHD. (R. at 339; ECF No. 15 at 6.)

Plaintiff began treatment with Mr. Ronald Baptist, M.A., LPC in 2004. Mr. Baptist provided treatment including psychotherapy, cognitive behavioral therapy, and eye movement desensitization and reprocessing. (R. at 824–27.) Plaintiff had regular sessions with Mr. Baptist from August 18, 2004 through November 9, 2004, July 7, 2005 through April 18, 2006, and from September 2009 to the present. (R. at 185, 824–27.) Plaintiff has had *at least 289* one-hour sessions with Mr. Baptist as of the time of filing this appeal. (R. at 316–17, 824–27.) Mr. Baptist consistently observed that Plaintiff demonstrated agitation, a tangential and disconnected verbal style, and an awkward interpersonal style alternating between states of relatively normal presentation and obvious anxiety and insecurity. (R. at 189.) Mr. Baptist explained that Plaintiff comes across as very normal, but then he "gets triggered and he starts building stress, rejection, and struggling with his sense of being [inadequate] and being dependent. . . .

and then it usually leads to frustration, and the next thing is some kind of anger outburst." (R. at 320.)

Mr. Baptist noted that "for most of the time that [Plaintiff] is awake and aware, he is experiencing a significant amount of anxiety." (R. at 319.) Plaintiff's anxiety and dependent personality disorder impacts all aspects of Plaintiff's life. (R. at 319.) This combination of mental health issues leads to a troublesome, ineffective, and dysfunctional way of relating to people. (R. at 322.) This interferes with his personal relationships and leads to difficulty with supervisors. (R. at 319, 323–24.) For instance, Plaintiff plays the saxophone, but cannot work with other musicians because he fails to maintain those relationships—ultimately Baptist had to stop encouraging him to seek band mates because these relationships would "end in some kind of trouble." (R. at 326.)

Mr. Baptist further noted that even on Ritalin, Plaintiff struggled to focus. (R. at 326–27.) This would manifest in conversation, where Plaintiff would get sidetracked, tangential, and off-focus, "even when he's doing fairly well." (*Id.*) Moreover, Mr. Baptist observed that changes in a routine work setting cause Plaintiff distress and that some of Plaintiff's job losses were directly related to his panic when a policy was changed. (R. at 328.)

Mr. Baptist opined—after at least 289 sessions with Plaintiff—that as a result of his mental health impairments, Plaintiff would be precluded from performing the following functions for at least 20% of the workday:

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and

3

- respond appropriately to changes in a routine work setting. (R. at 187.)

Mr. Baptist further opined that Plaintiff would be precluded from performing the following functions for at least 15% of the workday:

- remember work-like procedures

- maintain attention and concentration for extended periods,

- sustain an ordinary routine without special supervision,

- make simple work-related decisions,

- perform at a consistent pace without an unreasonable number and length of breaks, and

- accept instructions and respond appropriately to criticism from supervisors. (*Id.*)

Plaintiff also saw a psychiatrist, Dr. Stephen Mueller, M.D., about once every one to three months, beginning in 2010. (R. at 622.) Dr. Mueller diagnosed Plaintiff with bipolar disorder (depressed, not psychotic), generalized anxiety disorder, attention deficit disorder, bipolar disorder, and dependent personality disorder. (R. at 232.) Dr. Mueller also adjusted Plaintiff's psychiatric medications, which included Depakote, Celexa, and Ritalin. Dr. Mueller observed that Plaintiff would blow up, throw things, get angry, yell, hit tables, and had lashed out at his mother and ex-wife—his girlfriend had to call the police when Plaintiff hit his girlfriend's window with a stick. (R. at 653–54.) According to Dr. Mueller, Plaintiff was depressed, extremely lonely, "gets an attitude too quickly," never wants to be single, and has suicidal thoughts when rejected. (*Id.*)

Additionally, Plaintiff had two emergency room visits for anxiety. (*Id.*) Between 2011 and 2015, Plaintiff was fired from seven jobs for angry outbursts. (R. at 631–644.) In 2015, Plaintiff got a new job, which he held until the time of the second hearing in

4

2017. (R. at 626.) He managed to sustain this job because he worked part time and was given significant accommodations, including a flexible schedule. (R. at 538–541.) In early 2017, Dr. Mueller maintained that Plaintiff was only capable of low stress, part time work. (R. at 756.)

Dr. Mueller also found that Plaintiff has marked impairments in his ability to do the following:

- understand and learn terms, instructions, and procedures,
- identify and solve problems,
- sequence multi-step activities,
- use reason and judgment to make work-related decisions,
- handle conflicts with others,
- understand and respond to social cues (physical, verbal, emotional),
- respond to requests, suggestions, criticism, correction, and challenges,
- keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness,
- work at an appropriate and consistent pace,
- complete tasks in a timely manner,
- ignore or avoid distractions while working,
- change activities or work settings without being disruptive,
- work close to or with others without interrupting or distracting them,
- work a full day without needing more than the allotted number or length of rest periods during the day,
- respond to demands,

5

- adapt to change,

- manage his psychologically based symptoms,

- distinguish between acceptable and unacceptable work performance, and

- set realistic goals. (R. 657–661.)

The Administration had Plaintiff evaluated by consultative psychologist Brad Marten, Psy.D., in a one-time visit on October 4, 2013. (R. at 244.) Dr. Marten reviewed only two of Dr. Mueller's handwritten notes, and conducted a clinical interview. (*Id.*) After this single clinical interview, Dr. Marten opined that Plaintiff's diagnosis was major depressive disorder (recurrent, mild), dysthymic disorder (provisional), rule out bipolar disorder not otherwise specified, anxiety disorder not otherwise specified, rule out generalized anxiety disorder, and attention-deficit hyperactivity disorder (inattentive type). (R. at 250.)

Regarding Plaintiff's limitations, Dr. Marten noted that Plaintiff had "limited efficiency" in his ability to respond to directions and/or inquiry in workplace settings. (R. at 251.) However, Dr. Marten found that Plaintiff had "intact ability to attend to simple instructions and tasks as well as actively concentrate on more complex directions and tasks in work place settings. These findings suggest adequate ability to carry out such instructions and/or activities as well." (*Id.*) Dr. Marten observed that Plaintiff displayed mild-to-moderate difficulty with delayed auditory recall, which, according to Dr. Marten suggests similar limitations in his ability to consolidate and retrieve pertinent auditory verbal information in workplace settings. (*Id.*) Dr. Marten concluded that Plaintiff's "apparent chronic characterological difficulties are likely to continue to negatively impact appropriate interpersonal and social functioning in workplace settings and in general."

6

(R. at 252.)

Plaintiff's application for disability insurance benefits was originally denied in an ALJ Decision–Unfavorable dated January 28, 2015. (R. at 374.) Plaintiff appealed to the Appeals Council which declined review, making the ALJ's decision the final agency action. (R. at 392.) Plaintiff then filed a complaint in this Court. (R. at 395.) The Administration responded by filing an Unopposed Motion for Remand to Agency. (R. at 407.) The agency found several issues with the ALJs decision, including:

- The ALJ gave little weight to the opinions of Mr. Baptist solely because Baptist was, according to the ALJ, not an acceptable medical source, without any additional analysis. (*Id.*) While Baptist is not a listed acceptable medical source under social security regulations, Social Security Ruling 06-3 requires ALJs to weigh opinions from "other sources" using the factors set forth in 20 CFR § 404.1527. (*Id.*)

- The ALJ did not apply the factors in 20 CFR § 404.1527 in evaluating the opinion of a treating physician, Dr. Mueller. (*Id.*)

- The record appeared to be incomplete. (R. at 408.)

On remand, the same ALJ again denied the claim in an October 25, 2017 decision. The Appeals Council declined review and the ALJ's October 25, 2017 decision ("ALJ's decision") became the final agency decision. (ECF No. 15 at 4.) Plaintiff filed a timely Complaint and Petition.

The ALJ's decision follows the Administration's five-step sequential evaluation

process.[2]  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of September 1, 2012 through his date last insured of September 30, 2016.  (R. at 339.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "affective, anxiety and personality disorders."  (R. at 339.)  The ALJ also found that Plaintiff had the following non-severe impairments: attention deficit disorder and attention deficit hyperactivity disorder.  (R. at 340.)  The ALJ found that these impairments were non-severe because Plaintiff "has been able [to] work in various jobs and was able to obtain two bachelor's degrees."  (R. at 340.)

At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)  In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied.  (*Id.*)  To satisfy the paragraph B criteria, the mental impairments must result in at least one extreme or two marked limitations in one of the following broad areas of functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing themselves. (*Id.*)  A marked limitation means "functioning in this area independently, appropriately,

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof in steps one through four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis." (*Id.*)

In the first category—understanding, remembering, and applying information—the ALJ found that Plaintiff has moderate limitations. (*Id.*) The ALJ noted that although Plaintiff alleged he has difficulty remembering generally, Plaintiff also stated that he could prepare meals, go to doctor's appointments, shop, drive, and read. (*Id.*) In the second category—interacting with others—the ALJ found that Plaintiff has moderate limitations. (*Id.*) Plaintiff alleged that he has difficulty getting along with others and dealing appropriately with others. (*Id.*) However, the ALJ emphasized that Plaintiff also takes his mom on errands, sees friends on a regular basis, and only has social limitations when he is distressed. (R. at 8–9.)

Turning to the third category—concentration, persistence, or maintaining pace—the ALJ found that Plaintiff has moderate limitations. (R. at 341.) The ALJ acknowledged that Plaintiff contended that he has limitations in concentrating generally and completing tasks. (*Id.*) However, the ALJ also noted that Plaintiff is able to drive, prepare meals, watch TV, read, play the saxophone, and handle his own medical care. (*Id.*) The ALJ found that Plaintiff has mild limitations in the fourth category—adapting or managing himself. (*Id.*) According to the ALJ, Plaintiff did not allege any symptoms or limitations that relate to this criterion, rather, Plaintiff stated that he is able to handle self-care and personal hygiene. (*Id.*) Additionally, the ALJ pointed out that evidence on the record showed that Plaintiff has "no problem getting along well with providers and

9

staff." (*Id.*)

Thus, at step three, the ALJ concluded that "[b]ecause [Plaintiff's] mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied." (*Id.*) The ALJ also found that Plaintiff's condition does not satisfy the paragraph C criteria. (*Id.*) To fulfill the paragraph C criteria, an individual must demonstrate a medically documented history of a mental disorder that has lasted for at least two years. (*Id.*) The ALJ found that Plaintiff's impairments have persisted for more than two years. (*Id.*) However, the ALJ noted that "it is clear from the record that [Plaintiff] is able to live independently and maintain a part-time job since November 2015, working 24 hours a week." (*Id.*)

Thus, the ALJ found that Plaintiff's "mental impairments, considered singly or in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08." (R. at 340.) In reaching this conclusion, the ALJ relied on Plaintiff's testimony at the hearing and Dr. Marten's notes from his *one-time* consultation with Plaintiff. The ALJ assigned significant weight to Dr. Marten's opinion "because it coincides with other evidence and testimony that shows [Plaintiff] is capable of being around others." (R. at 344–345.)

Notably, however, the ALJ assigned little weight to the opinion of Dr. Mueller, who has seen Plaintiff at least 24 times over the seven years before the ALJ's decision. The ALJ's 2016 decision had been voluntarily remanded by the Administration for assigning little weight to Dr. Mueller's opinion without explanation. (R. at 407.) In his present decision, the ALJ explains, "[a]lthough Dr. Mueller is an acceptable treating

source, the undersigned gives his opinion little weight. His marked social and concentration/ persistence and pace limitations are inconsistent with his own treatment notes, which show [Plaintiff] engages in frequent social situations. . . . Moreover, Dr. Mueller is a psychiatrist and only provided medication management, not therapy." (R. at 345.) Finally, the ALJ assigned little weight to Mr. Baptist's opinions regarding Plaintiff's limitations, even though they were based on over 289 sessions with Plaintiff. (R. at 346.)

The ALJ's 2016 decision had also been remanded because he "gave Mr. Baptist's opinions little weight solely because Mr. Baptist was not an acceptable medical source, without any additional analysis." (R. at 407.) In his present decision, the ALJ found that Mr. Baptist's "opinions are inconsistent with [] Dr. Mueller's treatment notes and the record as a whole, which [] show that the claimant socializes with others and is able to follow written and spoken directions. . . . the undersigned notes that a counselor is not an acceptable medical source." (R. at 346.)

Before reaching step four, the ALJ analyzed Plaintiff's Residual Functional Capacity ("RFC") and found that Plaintiff had the RFC to "perform a full range of work at all exertional levels. However, [Plaintiff] is only able to perform non-complex tasks, defined as unskilled tasks requiring a specific vocational preparation (SVP) or 2 or less. The claimant can only occasionally deal with the general public and coworkers and cannot tolerate more than minimal supervision." (R. at 342.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. at 347.) After considering the RFC assessment described above, along with Plaintiff's age, education, and work experience, at step five the ALJ determined that there are jobs that exist in

11

significant numbers in the national economy that Plaintiff can perform.  (*Id.*)  These jobs include dining room attendant, landscape laborer, and night cleaner.  (R. at 348.)

Plaintiff initiated this action on January 2, 2018, challenging the ALJ's October 25, 2017 decision, which is now before the Court.  (ECF No. 15.)

## II.  LEGAL STANDARD

The Court reviews the Administration's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Administration's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Plaintiff challenges the ALJ's finding at step 3 on three main bases: (1) the ALJ's assessment of medical opinion evidence, (2) the ALJ's assessment of lay witnesses' statements, and (3) the ALJ's findings regarding the consistency of Plaintiff's allegations.  (ECF No. 15 at 5.)

Plaintiff raises two arguments under the first basis. Plaintiff first argues that the ALJ assigned little weight to the medical opinions of Mr. Baptist and Dr. Mueller, when they were entitled to controlling or significant weight under 20 C.F.R. § 404.1527(c)(2) and (f). (*Id.*) Plaintiff contends that the ALJ failed to give specific and legitimate reasons for doing so. (*Id.*) Additionally, Plaintiff argues that the ALJ gave significant weight to the opinion of a consultative examiner. (*Id.*) Plaintiff maintains that this opinion was not entitled to any weight.

The Administration responds that the ALJ provided good reasons for the weight he assigned to the various opinions of record. (ECF No. 17 at 8.) The Administration argues that little weight was assigned to Dr. Mueller and Mr. Baptist's opinions because they contained "few if any clinical findings and demonstrated that Plaintiff improved with treatment." (*Id.* at 11.) The Administration argues that the ALJ "found those sources' opinions were inconsistent with the record as a whole, which showed that Plaintiff maintained an active social life despite complaints of marked social limitations and that he improved enough to hold the same job for more than two years." (*Id.*)

According to the Administration, "[t]hat evidence conflicted sharply with the opinions of Dr. Mueller and Mr. Baptist that Plaintiff had impairments that precluded him from performing most work-related activities for up to 20% of the workday and that he was incapable of handling work stress." (*Id.*) The Administration argues that "[t]he ALJ assigned Dr. Marten's opinion significant weight because it was consistent with the evidence of record and with Plaintiff's testimony about his very broad range of social activities and his ability to independently run his own life (other than some help with

13

finances). . . . Dr. Marten's opinion is consistent with treatment notes from Dr. Mueller and Mr. Baptist showing consistently significant social interaction and improvement with treatment." (*Id.*)

Under 20 C.F.R. § 404.1527(c), the Administration is required to consider the following factors in deciding the weight assigned to any medical opinion:

1. The examining relationship: generally more weight is assigned to the medical opinion of a source who has examined the Plaintiff.

2. Treatment relationship: generally more weight is assigned to medical opinions from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations." Under this factor, the Administration is also required to consider the length of the treatment relationship and the frequency of examination as well as the nature and extent of the treatment relationship.

3. Supportability: the Administration is supposed to assign more weight to a medical source who presents relevant evidence to support the medical opinion, particularly medical signs and laboratory findings.

4. Consistency: generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

5. Specialization: the Administration generally assigns more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty

than to the medical opinion of a source who is not a specialist.

Moreover, 20 C.F.R. §404.1527(f) provides:

> Consideration. Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

Dr. Mueller has seen Plaintiff since 2010, at a frequency of once every one to three months, and Mr. Baptist has had at least 289 sessions with Plaintiff. Although Mr. Baptist is a non-medical source, his relationship with Plaintiff is precisely the kind of relationship 20 C.F.R. § 404.1527(f) was meant to include. The Court notes that Plaintiff's relationships with Mr. Baptist and Dr. Mueller are some of the longest treatment relationships it has ever seen when reviewing social security appeals. Thus, under the first two factors, Dr. Mueller and Mr, Baptist's opinions should have been assigned significant weight. Their medical opinions were entitled to more weight under

the third factor as well.

The ALJ stated that he assigned little weight to both Mr. Baptist and Dr. Mueller's opinions because they were inconsistent. As an initial matter, it is important to note that both of Plaintiff's long-term treatment providers, Mr. Baptist and Dr. Mueller, had almost identical findings regarding Plaintiff's impairments and limitations. Additionally, after studying the record and the medical opinions, the Court finds that the ALJ specifically mischaracterized this evidence in his decision. The Administration repeatedly points out that Plaintiff was volunteering once a week at a pet shelter, playing in two bands, and had kept the same job for more than one year. (ECF No. 17 at 10.) What the Administration overlooks is that while Plaintiff does *attempt* to participate in social activities, these attempts are unsuccessful and exacerbate Plaintiff's stress such that Mr. Baptist stopped encouraging Plaintiff to participate in social activity. (R. at 319–26, 631–44, 653–54.) While Plaintiff did maintain the same job for over a year, it was a part time job in which Plaintiff was given various accommodations, like flexible hours. (R. at 631–44.) Both of his treatment providers note that he will have significant difficulty functioning in a typical workplace atmosphere. (R. at 538–41, 756.)

The Court concludes that because the ALJ did not properly consider the medical opinion evidence provided by Dr. Mueller and Mr. Baptist, his factual findings are not supported by the substantial evidence in the record. The ALJ's findings are overwhelmed by the remaining record evidence and, moreover, the ALJ also failed to properly resolve the problems raised in the Administration's motion for remand. "In the substantial evidence analysis, the denominator (all available evidence) is as important

as the numerator (the evidence relied upon to reach a decision)." *Lamont v. Connecticut Gen. Life Ins. Co.*, 215 F. Supp. 3d 1070, 1080 (D. Colo 2016.) Here, the ALJ relied heavily on Dr. Marten's opinion, and in the process assigned significant weight to a consultative examiner, and mischaracterized and discarded the opinions of Plaintiff's long-term treatment providers. When the opinions of Dr. Mueller and Mr. Baptist are accorded their appropriate weight, it is clear that Plaintiff's impairments satisfy the paragraph B criteria. The Court holds, therefore, that Plaintiff is disabled within the meaning of the Social Security Act at step three of the five-step analysis.

The Court has reached this conclusion after considering the record as a whole, the ALJ's decision, and the history of this case. It is abundantly clear to the Court that any additional fact finding would not serve a useful purpose here. *Sorenson v. Brown*, 888 F.2d 706, 713 (D. Colo. 1989). "The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Moore v. Astrue*, 2009 WL 215356, at *4 (D. Kan. Jan. 28, 2009). Such is the case here. The medical opinions of Plaintiff's treatment providers clearly establish that Plaintiff is entitled to the benefits he seeks. There is no additional evidence that Administration can point to which would suggest that Dr. Marten's opinions, derived solely from his single consultative examination of Plaintiff, should outweigh the opinions of Plaintiff's treatment providers.

But even if the case were otherwise, the Court must also consider more practical concerns. One factor deemed relevant by the Tenth Circuit is the length of time the

matter has been pending. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Plaintiff alleges a disability onset date of September 1, 2012, and he filed his application for disability benefits on April 10, 2013. (R. at 339; ECF No. 15 at 4.) This matter has therefore been pending, either before the ALJ or in this Court, for *over five and one-half years*.

The Court also already remanded this case once per the Administration's own request, in August 2013, for further consideration of the exact same grounds on which the Court now bases its disability determination. (R. at 402–408.) Remanding this matter for yet another administrative hearing would only serve to significantly delay final resolution of this appeal, without the possibility of any meaningful change in the factual record. "The Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993); *see also Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) ("In light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings, we exercise our discretionary authority to remand for an immediate award of benefits.").

Given all of the above, the Court is of the view that this is one of those rare appeals in which the governing law, as well the equities involved, support the conclusion that an immediate award of benefits is the proper and just disposition of this appeal.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS that the Administration's determination that Plaintiff is not disabled is REVERSED. The Court hereby further ORDERS that this matter be REMANDED to the Administration for an immediate award of benefits as of September 1, 2012, Plaintiff's disability onset date.

Dated this 31st day of October 2018.

BY THE COURT

William J. Martínez
United States District Judge